## SUPREME COURT.

THE PEOPLE *ex rel.* JAMES KILBOURN agt. JAMES ALLEN.

*Appointment of street commissioner of the city of Albany.*

An application to a judge, under the statute, for books and papers, is designed to be a summary proceeding, and the officer to whom it is made has no power to declare the action of the appointing and confirming power void for official corruption, especially where there is no clear proof of the fact.

Where the mayor of a city nominates several persons on one list for different offices, two of whom are aldermen, before whom the nomination will come, in the common council, for confirmation, it will not be assumed that the nomination was made with the corrupt intent of bribing the two aldermen to vote for the other persons on the list, where the intent of the mayor in making the nomination is susceptible of a fair and honorable motive.

The nomination of street commissioner, made by the mayor to the common council, upon a list containing several other candidates for distinct and separate offices, may properly be confirmed by the common council in gross, by one vote or resolution — not necessary to act upon each case separately.

APPLICATION under the statute before judge WESTBROOK, as a judicial officer, by Kilbourn to compel Allen to surrender the books and papers belonging to the street commissioner of the city of Albany.

*G. Tremain & Matthew Hale,* for Kilbourn.

*N. C. Moak,* for Allen.

WESTBROOK, *J.* — By the charter of the city of Albany, the street commissioner is appointed by the mayor and confirmed

by the common council.   He holds his office for two years, and until his successor has been "appointed and duly qualified."

The respondent, James Allen, was so appointed in the year 1873, and now claims to continue in office, because, as he alleges, his successor has not yet been "appointed and duly qualified."    The relator, Kilbourn, claims the office thus:  On April 17, 1876, the then mayor of the city, Mr. E. L. Judson, sent to the common council a communication in writing, by which he nominated several different persons to several different offices, and upon that list of names was that of the relator, who was named for the office of street commissioner. Among the parties thus nominated by the mayor were also the names of Frederick Andes and Peter C. Lauder, who were then aldermen of the city, the former being designated for the position of excise commissioner, and the latter for that of city marshal.   When the communication was received, a motion was made to adjourn, and Alderman Cavanagh, who was then in the chair, declared the motion carried.   An appeal from the decision, as announced by the chair, was immediately taken, which Cavanagh refused to put, and then left the chair and the room, the clerk, Martin Delehanty, following him.   After they had left the room, Alderman Luby was called to the chair, and the appeal was sustained, by nine votes, a full board consisting of sixteen members. A clerk was also made, and on motion, the several nominations of the mayor, among which was that of Kilbourn, the relator, were confirmed by a single vote taken upon all together, nine votes being cast in favor of such confirmation.

Kilbourn then qualified before the mayor and filed his official bond.   On the twenty-fourth of April, 1876, the board of aldermen again met, Alderman Cavanagh in the chair. The minutes of the preceding meeting of April 17, 1876, were so amended and adopted as to show the facts of that meeting as hereinbefore stated.   A communication was received from the mayor that Messrs. Andes and Lauder had

each refused the office to which he had been appointed, and nominating Charles Kirchner for excise commissioner in the place of Mr. Andes, and Mr. Augustus F. Fisher for city marshal instead of Mr. Lauder. These nominations, together with those acted upon at the meeting of April seventeenth, except those of Andes and Lauder, were then confirmed by a vote of nine to six. The vote was a single one upon all the names together. After this reconfirmation, the relator, Mr. Kilbourn, again qualified as street commissioner. Since this time he has endeavored to perform the duties of the office, and on April twenty-ninth demanded of Mr. Allen certain books and papers belonging to the office, which were refused. After such refusal this proceeding was initiated.

In answer to the application, the respondent, Mr. Allen, claims that the appointment of Mr. Kilbourn was illegal and void, because the naming of two men for offices, who were members of the common council, was an offer of a bribe to them to vote for the confirmation of others, and because the attempted confirmation of all by a single vote was illegal and void; whilst the alleged reconfirmation of April twenty-fourth was also illegal and void, because having once voted upon the confirmation of these officers at a previous meeting, the power of the board was exhausted and no new vote could legally be had; and, also, because the confirmation was obnoxious to the previously stated objection, that it was by a vote in gross and not by one upon each separately.

It was at one time held (*Devlin* agt. *Conover*, 5 *Abbott*, 74), that upon such a proceeding as this, the officer before whom it was pending had no right to look beyond the actual possession of the office; that, in any case, when the one or the other was conducting the office he would not be interfered with. The effect of this doctrine was, however, to nullify the statute, for in every case an incumbent could defeat his successor by refusing to surrender the position, and then in every case the party claiming an office would be compelled to resort to a writ of *quo warranto*. The better opinion now

seems to be, that when the case is free from reasonable doubt the application should be granted (*North* agt. *Cary*, 4 *N. Y. S. C. Rep.*, 357).

Neither is this a proceeding in which the title to the office is to be tried. If the office was an elective one, and the result had been declared in favor of the applicant for the books and papers, the officer upon this proceeding would not go back of the result as declared, to investigate the legality of the votes cast, nor the bribery of voters. Neither in the case of an officer appointed by an executive, and confirmation by a board, should the officer to whom this application is made go behind the appointment and confirmation to investigate fraud and corruption, even if that would vitiate the appointment or the evidence was sufficient to justify the charge. An application under the statute for books and papers is designed to be a summary proceeding, and the officer to whom it is made has no power, in my judgment to declare the action of the appointing and confirming power void for official corruption, especially when there is no clear proof of the fact. It is a statute proceeding strictly, and no power can be exercised beyond that actually conferred. On the merits, however, of the allegation, we observe that it may be true that the nomination of Andes and Lauder was intended to improperly influence them in their votes upon other nominees; and it may also be true that they were selected on account of their eminent fitness for the positions to which they were nominated, and that the idea of thus influencing their votes never occurred to the officer who made the appointment. If corruption and fraud could be inferred from the mere nomination, then, whenever the governor of the state sends to the senate, of which a majority is of adverse politics, the names of several persons, some of whom profess a political belief similar to that of the appointing power, and others whose views are identical with those of the senate majority, then it might be argued that the executive offered his political opponents a bribe to secure their votes in favor of his own

People *ex rel.* Kilbourn agt. Allen.

friends. Such a conclusion would be unjust and unfair, and there is no distinction between the supposed case and the real. In the one it may be said that the confirming power is bribed by favors bestowed upon friends, and in the other by favors bestowed upon themselves. The alleged bribery in the one case is the same as in the other in kind, and differs in degree only. Every nomination should stand or fall upon its own individual merits, and perhaps in a very strict sense, the practice in either case should be condemned, but actual corruption could not be inferred from the simple acts.

The remaining objection to the application is, that the confirmation of the nominations, including that of street commissioner, was in gross, and was therefore void. The statute (*sec.* 10, *of title* 3 *of charter*) does not prescribe the manner of confirmation. It simply says, " the mayor with the consent and approval of the common council of the said city, shall biennially appoint  *  *  *  one street commissioner," &c., &c. That " consent and approval " is simply to be expressed. If by a single vote " consent and approval " is given to several appointments, it would be difficult to say none had been expressed. If I say I consent to and approve of the appointment of A. to the office of chamberlain, of B. to the office of deputy chamberlain, &c., expressing it in writing and subscribing it by name, it would be difficult to say it was not as effectual and valid an approval as if I had subscribed two papers. And when a common council is to " consent and approve," and does " consent and approve " of several appointments by a single resolution, I see no reason to doubt the validity of the act. It is certainly the daily practice thus to express consent, and I should be reluctant to hold that such " consent and approval " were void. There may be reasons why more strictly legislative action cannot be thus conducted, and upon that point no opinion is expressed, but I cannot hold that the law has been violated, and that so many officers have discharged duties illegally and drawn salaries unlaw-

fully, as they certainly have if this point of the respondent is well taken.

It was not claimed or argued that the pretended adjournment of April seventeenth was legal. It clearly, however, was not. A chairman and clerk cannot override the will of a majority of the common council, which they undertook to do. I regard the confirmation of April 17, 1876, as valid despite the attempted adjournment, and if it was not, the subsequent action on the twenty-fourth of the same month, being at a regular meeting, certainly was. If, as the counsel for the respondent argues, the action of the seventeenth was void, and no action because of bribery and corruption, then that of the twenty-fourth, which was not obnoxious to that objection, was clearly proper. The approval and consent of the common council, expressed by their vote of the seventeenth, the counsel argues must be treated as null by reason of the proffered bribe (and he must take that position to make his point, for if voidable only, there is no power vested in me as a judge — an officer merely — to declare it void), then no pretended action on that day had exhausted the power of the common council in the premises, and they were free to act upon the twenty-fourth. That which is void is nothing, and to claim that power has been expended, when none has been exerted is the claim of a legal impossibility.

My conclusion is that the order asked for must be granted.